2015 ND 250

**Patricia Lynn OLSON, Appellant**

v.

**Grant LEVI, Director of the North Dakota Department of Transportation, Appellee.**

**No. 20150131.**

Supreme Court of North Dakota.

Oct. 13, 2015.

Rehearing Denied Dec. 1, 2015.

Thomas F. Murtha IV, Dickinson, N.D., for appellant.

Douglas B. Anderson, Assistant Attorney General, Office of Attorney General, Bismarck, N.D., for appellee.

McEVERS, Justice.

[¶ 1] Patricia Lynn Olson appeals from a judgment affirming a decision of the Department of Transportation to suspend her driving privileges for two years. Because we conclude the Report and Notice form was sufficient to give the Department authority to suspend Olson's driving privileges, and because we reject her constitutional arguments, we affirm the judgment.

I

[¶ 2] In the early morning hours of May 16, 2014, Morton County Deputy Sheriff Gordon LeClair provided backup for another officer on a traffic stop in Hebron. Officer LeClair testified that "while [the other officer] was putting his prisoner in the backseat[,] his prisoner wanted me to talk to his friend and say, 'hey, can they bail him out of jail.'" Officer LeClair asked the prisoner, "are they going to be under the influence? He said apparently." Officer LeClair asked the prisoner "which vehicle is it? And he told me that it was the SUV that was parked by his vehicle." Officer LeClair approached the vehicle, and noticed a female, identified as Olson, in the driver's seat. According to Officer LeClair, Olson "grabbed her keys, put them in the ignition and rolled down the window approximately an inch." Officer LeClair noticed

an odor of alcohol coming from the vehicle and Olson admitted she had been drinking. Officer LeClair asked Olson to get out of the vehicle, Olson agreed to take field sobriety tests, and she failed them. Olson refused to consent to a breath test so Officer LeClair arrested her for actual physical control of a motor vehicle. Officer LeClair read Olson the implied consent advisory, after which Olson consented to a blood test. The blood test revealed a blood-alcohol concentration of 0.208 percent.

[¶ 3] The Report and Notice form completed by Officer LeClair listed the date of the occurrence and the "Time of Driving/Physical Control/Crash" as "0139" a.m. Officer LeClair listed the county and city of the occurrence and in the line for "Location of Arrest or Where Detained" wrote "Brick City Motel Parking Lot." Officer LeClair indicated, "On the above date, there existed reasonable grounds to believe that the above-named person was operating . . . Non–Commercial motor vehicle." Officer LeClair checked the box stating Olson "Was lawfully arrested and informed that he or she will be charged with the offense of driving or being in actual physical control of a vehicle while under the influence of intoxicating liquor or drugs." In the officer's statement of probable cause portion of the form, under the category "Reasonable suspicion to stop or reason lawfully detained," Officer LeClair checked the box "already stopped" and explained: "A friend wanted me to tell her he would need to be bonded out of jail." Under the category "Probable cause to arrest/lawfully detain," Officer LeClair checked the boxes "odor of alcoholic beverage," "poor balance" and "failed field sobriety test(s)," and explained "odor of alcoholic beverage" and "Failed S.F. St."

[¶ 4] Olson requested an administrative hearing to contest the Department's intention to suspend her driving privileges. Following the hearing, the Department found Officer LeClair had reasonable grounds to believe Olson was in actual physical control of a motor vehicle while under the influence of alcohol, she was placed under arrest and tested in accordance with the law, and she had an alcohol concentration above the legal limit. The Department suspended Olson's driving privileges for two years and the district court affirmed the Department's decision.

## II

[¶ 5] Olson argues the Department erred in suspending her driving privileges.

[¶ 6] In *Kroschel v. Levi*, 2015 ND 185, ¶ 6, 866 N.W.2d 109, we explained:

"We review an administrative revocation of a driver's license under N.D.C.C. § 28–32–46." *Vanlishout v. N.D. Dep't of Transp.*, 2011 ND 138, ¶ 12, 799 N.W.2d 397. We must affirm the Department's order unless:

"1. The order is not in accordance with the law.

2. The order is in violation of the constitutional rights of the appellant.

3. The provisions of this chapter have not been complied with in the proceedings before the agency.

4. The rules or procedure of the agency have not afforded the appellant a fair hearing.

5. The findings of fact made by the agency are not supported by a preponderance of the evidence.

6. The conclusions of law and order of the agency are not supported by its findings of fact.

7. The findings of fact made by the agency do not sufficiently address the evidence presented to the agency by the appellant.

8. The conclusions of law and order of the agency do not sufficiently explain the agency's rationale for not adopting any contrary recommendations by a hearing officer or an administrative law judge."

N.D.C.C. § 28–32–46. "When an appeal involves an interpretation of a statute, a legal question, this Court will affirm the agency's order unless it finds the order is not in accordance with the law." *Johnson v. Dep't of Transp.*, 2004 ND 148, ¶ 5, 683 N.W.2d 886. "Although this Court's review is limited to the record before the administrative agency, 'the district court's analysis is entitled to respect if its reasoning is sound.'" *Deeth v. Dir., N.D. Dep't of Transp.*, 2014 ND 232, ¶ 10, 857 N.W.2d 86 (quoting *Obrigewitch v. Dir., N.D. Dep't of Transp.*, 2002 ND 177, ¶ 7, 653 N.W.2d 73). "We review appeals from the final judgment of a district court in the same manner as provided for in N.D.C.C. § 28–32–46 or N.D.C.C. § 28–32–47." *Deeth*, at ¶ 11. "An agency's conclusions on questions of law are subject to full review." *Vanlishout*, 2011 ND 138, ¶ 12, 799 N.W.2d 397.

·A··

■ [¶ 7] Olson argues the Department lacked authority to suspend her driving privileges because the Report and Notice form completed by Officer LeClair failed to designate how law enforcement believed she was driving or in physical control of a vehicle. Olson further argues the form does not state she was driving or in actual physical control.

[¶ 8] In *Aamodt v. N.D. Dep't of Transp.*, 2004 ND 134, ¶¶ 14, 26, 682 N.W.2d 308, this Court held the statutory provision currently found in N.D.C.C. § 39–20–03.1(4) requiring that an officer list on the Report and Notice form forwarded to the Department reasonable grounds to believe the person was driving or in actual physical control of a vehicle while under the influence of alcohol is a basic and mandatory provision that must be complied with before the Department is authorized to suspend a person's driving privileges. *Aamodt* was an actual physical control case in which the arresting officer only checked the boxes "already stopped" and "odor of alcoholic beverage" in the officer's statement of probable cause portion of the form. 2004 ND 134, ¶ 10, 682 N.W.2d 308. The Department conceded this was insufficient to show probable cause, and instead argued the statutory provision was not a basic and mandatory provision. *Id.* at ¶ 15. The only case since *Aamodt* in which we have ruled the Report and Notice form was insufficient to authorize the Department to suspend driving privileges is *Morrow v. Ziegler*, 2013 ND 28, ¶¶ 1, 12, 826 N.W.2d 912. *Morrow* was a driving under the influence case in which the arresting officer on the Report and Notice form only "checked the box indicating Morrow refused the onsite screening test, indicated the traffic violation as the reason for the stop, and wrote 'N/A' in the probable cause to arrest section." *Id.* at ¶ 4. We concluded "the officer's failure to record his belief that Morrow's body contained alcohol made the report deficient, and the Department did not have the authority to suspend Morrow's driving privileges." *Id.* at ¶ 12.

■ [¶ 9] We have upheld the sufficiency of the Report and Notice form in other cases. *Brewer v. Ziegler*, 2007 ND 207, ¶¶ 2, 16, 743 N.W.2d 391, was an actual physical control case in which the officer checked "failed field sobriety test(s)" and "failed screening test" as grounds for probable cause and wrote in the report Brewer had "failed HGN" and had "failed SD–2." We concluded the offi-

cer's report "included adequate probable cause information to constitute a valid report for the Department to suspend Brewer's license." *Id.* at ¶ 16. In *Pokrzywinski v. Dir., N.D. Dep't of Transp.,* 2014 ND 131, ¶¶ 2, 13, 847 N.W.2d 776, Pokrzywinski was arrested for driving under the influence and the arresting officer in the probable cause section of the Report and Notice form checked the boxes "crash" and "odor of alcoholic beverage," and noted "admitted consuming 2 beers." We concluded "the arresting officer included sufficient information on the Report and Notice form to show reasonable grounds to believe Pokrzywinski had been driving a vehicle while under the influence of intoxicating liquor." *Id.* at ¶ 13. *Maisey v. N.D. Dep't of Transp.,* 2009 ND 191, ¶¶ 1, 6, 775 N.W.2d 200, involved an arrest for driving under the influence in which the arresting officer in the Report and Notice form, in the reasonable suspicion to stop or reason lawfully detained section, checked the box "already stopped" and wrote "Stopped by TAT officer Mark Nolan," and in the probable cause to arrest/lawfully detain section, checked the boxes "odor of alcoholic beverage," "poor balance," and "failed field sobriety test(s)" without providing a more detailed written explanation. We said:

> In this case, the deputy checked the boxes indicating "already stopped," "odor of alcoholic beverage," "poor balance," and "failed field sobriety test(s)." The boxes indicating "poor balance" and "failed field sobriety test(s)" show that the deputy observed that Maisey was physically or mentally impaired. The box indicating "odor of alcoholic beverage" shows the deputy had reason to believe the impairment was caused by alcohol. Maisey reads *Aamodt* to mean an officer must always provide a more detailed written statement of the facts supporting probable cause to believe the driver was driving under the influence of

alcohol. This requirement is not found in N.D.C.C. §§ 39–20–03.1( [4] ), 39–20–04(1), or in *Aamodt*. The hearing officer's determination that the Report and Notice showed probable cause to believe Maisey was driving under the influence of alcohol was in accordance with the law.

*Id.* at ¶ 13. Our case law does not impose a requirement that an officer provide a written statement detailing in actual physical control cases why the officer believed the arrestee was in actual physical control of a vehicle, or in driving under the influence cases why the officer believed the arrestee was driving a vehicle. A law enforcement officer does not need reasonable suspicion to approach an already stopped vehicle. *See Abernathey v. Dep't of Trans.,* 2009 ND 122, ¶¶ 8–9, 768 N.W.2d 485 (discussing the difference between law enforcement stopping a moving vehicle and approaching a parked vehicle).

[¶ 10] Here, Officer LeClair indicated on the Report and Notice form that "there existed reasonable grounds to believe" Olson "was operating . . . Non–Commercial motor vehicle" and wrote a "Motel Parking Lot" as the location of the arrest or detention. In the reasonable suspicion to stop or reason lawfully detained portion of the form, he checked the box "already stopped" and wrote an explanation why he lawfully approached Olson's vehicle. Officer LeClair checked three of the boxes under the probable cause to arrest or lawfully detain category and further wrote the reasons he believed Olson's body contained alcohol. Under this Court's precedents, we conclude the Report and Notice form contained sufficient reasonable grounds information to authorize the Department to determine whether Olson's driving privileges should be suspended.

**B**

[¶ 11] Olson raises several arguments claiming the implied consent laws are unconstitutional. Most of these arguments have already been rejected by this Court.

[¶ 12] In *State v. Smith*, 2014 ND 152, ¶ 16, 849 N.W.2d 599 and *McCoy v. N.D. Dep't of Transp.*, 2014 ND 119, ¶ 21, 848 N.W.2d 659, we held consent to a chemical test is not coerced and is not rendered involuntary merely by a law enforcement officer's reading of the implied consent advisory that accurately informs the arrestee of the consequences for refusal, including the administrative and criminal penalties, and presents the arrestee with a choice. *See also Wall v. Stanek*, 794 F.3d 890 (8th Cir.2015) (applying Minnesota law). In *State v. Birchfield*, 2015 ND 6, ¶ 19, 858 N.W.2d 302, we held the criminal refusal statute is not unconstitutional under the Fourth Amendment or N.D. Const. art. I, § 8. In *Beylund v. Levi*, 2015 ND 18, ¶¶ 30–31, 859 N.W.2d 403, we held the implied consent law does not violate the doctrine of unconstitutional conditions. In *State v. Baxter*, 2015 ND 107, ¶¶ 13–17, 863 N.W.2d 208, we held the criminal refusal statutes do not violate a defendant's due process rights. Recently, in *State v. Kordonowy*, 2015 ND 197, ¶¶ 15–19, 867 N.W.2d 690, we held the criminal refusal statutes are not unconstitutionally vague. Olson's arguments do not convince us to revisit these issues.

[¶ 13] Olson argues the criminal refusal statutes violate N.D. Const. art. I, § 20, which provides "[t]o guard against transgressions of the high powers which we have delegated, we declare that everything in this article is excepted out of the general powers of government and shall forever remain inviolate." "[T]his restriction is a limitation on legislation only." *Larkin v. Gronna*, 69 N.D. 234, 240, 285 N.W. 59, 62 (1939). *See also State ex rel. Cleveringa v. Klein*, 63 N.D. 514, 526, 249 N.W. 118, 124 (1933) (provision imposes "constitutional limitations on the power of the Legislature"). This provision prohibits the government from enacting legislation that violates the rights set forth in Article I of the Constitution. Our recent case law noted above establishes that the implied consent laws do not violate any rights guaranteed under Article I. Therefore, the Legislature has not violated N.D. Const. art. I, § 20, and Olson's argument is without merit.

**III**

[¶ 14] The judgment is affirmed.

[¶ 15] GERALD W. VANDE WALLE, C.J., DANIEL J. CROTHERS, DALE V. SANDSTROM and CAROL RONNING KAPSNER, JJ., concur.